morning. May it please the court. Council. My name is barry Breslow, counsel for the Plaintiff Appellant Response Time Inc. I'm with the Reno firm Robison Bellestage Sharp and Low. Only my second time before this body, I appreciate the opportunity to present our argument to you today. We're here essentially to address two issues. The first issue, succinctly stated, whether there was coverage. The second issue, even in the absence of coverage, under Nevada law, may response time proceed with a claim for bad faith against Hartford, based on its failure to properly and fully investigate the claim. Of course this body approaches the review with fresh eyes, because this is a de novo review of competing summary judgment motions below. Nevada law is somewhat vague with respect to advertising injury matters. And as this court knows, and as federal courts sitting in Nevada have done before, Nevada will often look to sister state jurisdictions for well-crafted, well-thought-out jurisprudence. In this case, we feel Nevada would look to California for the duties of an insurer to its insureds following the test and the principles set forth in Anthem Electronics. Counsel, the district court made the observation that it wouldn't really matter whether California law applied or other states' similar laws would apply, because the big difference is the duty to investigate, and that really doesn't change the answer. What's your response to that? Certainly. I believe what the court found in the order was, applying either the four corners test, like Texas, for example, by comparing the policy to the complaint, or applying the more liberal extrinsic evidence test, as does California, where the insurer is under an affirmative duty to consider extrinsic evidence presented by its insured, that the result would be the same. Because there was no advertising injury to begin with, no matter what evidence. That's exactly right. The court found that, but we're here to explain why that that was an error and this court should find otherwise. We're all familiar with the fact that in order for response time to prevail on the first issue, that of coverage, we need to show three things. We need to show advertising activity, we need to show allegations that raise the potential for liability arising out of one of the enumerated offenses, in this case, misappropriation of an advertising idea or misappropriation of a style of doing business, and then we need to show the third prong, which is a nexus or a connection between the harm and the actual advertising activity. Judge McKibben found only as to the second two that response time had failed to show or meet its burden and thus Hartford had no duty to defend. Judge McKibben respectfully was wrong. I'm concerned about the second prong. Certainly. I think the district court said that at least with respect to faxing Humphrey's resume around, that could be considered advertising because it was a pitch to customers. Yes. But what about the second element? Absolutely. Your Honor, the second element of allegations that even raise a potential, we don't have to show anything conclusively, of course, just the potential for liability arising out of Where's the advertising idea that's still on it? I mean, stealing an employee isn't stealing an advertising idea or a way of doing business. That's true. But if you compare and contrast the body of cases that are aligned with the frog switch, the Simply Fresh, the Winklevoss line of cases on the other I want to know factually in your case, where is the idea as distinct from the employee that you claim was stolen? Four places, Your Honor. Number one, in the complaint it alleges that we were being Sterling Commerce was suing response time because we had taken a person who had knowledge of not just who the customers were, but also the contact person with the customers, their particular needs, their particular service requirements, Sterling Commerce's plans to address, analyze, and fix those needs, and also Sterling Commerce's approach to generate more business and to solicit continued business. That looks a lot more like Sentex than it does with Frog Switch or Simply Fresh in terms of attempting to take something essentially related to manufacturing or production. It looks a lot more like efforts to gain new customers. Were those issues identified in Sterling's complaint? Those issues were identified in Sterling's complaint, absolutely. Sterling's complaint, as I understand it, was based upon stealing trade secrets. That's right. And in the factual allegation, Your Honor, before the actual claim for stealing trade secrets, they listed these particular concerns that I've just identified. But there were three other places in the record where Sterling Commerce more clearly articulated what it was that they were concerned that response time had allegedly taken. The second place was in its second supplemental disclosure statements that were filed with the court in Texas. And where? And considering extrinsic evidence. Filed where? Pardon me, Your Honor? Where was it filed? It was filed in the Texas action between Sterling Commerce and response time. The second supplemental disclosure statement articulated again that what Sterling Commerce was concerned had been taken. It wasn't just the person. It wasn't just customer lists. But was this person's knowledge of how Sterling intended to address its customer needs, how it intended to solicit continuing business from its customers. Its trade secrets. Its trade secrets. The third, Your Honor, the third time that But trade secrets are not advertising. Trade secrets can be advertising if you find, as you should, that what is really being taken here is, and the definition has been set forth in the Green Machine case, Third Circuit 2002, wrongful taking of a company's plans to solicit business and gain new customers. That's the definition of misappropriation of an advertising idea. And that is the definition, Your Honor, that Hartford had in the policy, that issue here, even after Hartford was sued in 1994 and lost, and then it was affirmed by the Ninth Circuit in 1996. The same exact language in the policy with the same exact definition. Or misappropriation of style and style of doing business. It's the wrongful taking of a plan to interact with customers and get their business. I realize that conceptually it's difficult to use the term advertising and want to know where's the billboard, where's the television piece, where's the mailer. But that's not how advertising injury is defined under the cases that construe policies like this. Advertising injury is essentially the wrongful taking of another company's plans to interact with its customers and gain their business. It is not. It is not. And Sentex noted the distinction with Simply Fresh. And Frogswitch noted the distinction. And Winklevoss noted the distinction. It is not taking the idea from another and turning it into a manufacturing or design proposition. We didn't send a person from Re- You want to take this and turn it into, to encompass all manner of business towards. I wouldn't agree with that, Your Honor, respectfully. Well, you've got trade secrets covered already, right? Only those trade secrets that are designed- You do have trade secrets covered, some trade secrets, right? In some form. In some form. If the trade secret we take is a plan to engage customers, solicit their business, or interact with- I think it's going to be very difficult to steal a trade, to make a claim for a set of trade secrets that doesn't in some way affect your ability to serve customers. You're right. What's the point of stealing Coca-Cola's secret for making Coke- If you're not going to sell it. If you're just going to do it in the bathtub at home and serve it to your children. No, absolutely correct. And that's why we have to satisfy the third prong. If Response Time had snuck over to Sterling and unlocked the door and took their plans how to make VectorSort and then took it and went to Response Time's office and turned it into VectorResponse and branded it as such and put it in the marketplace, clearly that's not covered. Clearly the harm, the stealing of the idea on how to manufacture or design occurs when we steal it, but when we put it in the marketplace and brand it as our own, all we're doing is taking a product and advertising that we've stolen it. No coverage. You say that, but I bet you under the very same principles you argue, the next counsel will say, Look at it. We just changed the word. All we did is we copied the advertising. It is pretty much like taking a McDonald's advertising, leaving the arches on there, but calling it McDougal's. So what's the big deal about changing a word? Well, good question, important question, but respectfully- I was part of it. As you should be. But respectfully, not dispositive to this appeal, because this body in the Centech- Argument. That's not my argument. Words came out of your mouth. This was going to be the refutation of why this is not the tort that ate Cincinnati. The answer is because the allegation is not that we stole VectorSort and sold VectorSort. The allegation is not that we stole VectorSort, took it, did some reverse engineering, designed it, packaged it, and sent it out into the marketplace, calling it our own, like in Microtech, like in WinkleBoss, like in- The allegation is that you stole employees. We took an employee with knowledge. We took an employee with knowledge of how Sterling interacted with its customers, had knowledge of their particular needs. That employee knows everything. So what's the answer to Judge Kaczynski's question with respect to stealing an employee? Does stealing an employee who knows everything about the company, including how it advertises, and does that sort of translate into this kind of coverage every time you steal an employee? I don't think- Fair question. I don't think so. I don't think that this body needs- It's fair. I get that. I don't- That's okay. Silver medal's good enough. I don't believe that this body needs to be unduly concerned that you're opening Pandora's box. The panel in the Centex Systems case fashioned an affirmation on somewhat narrower grounds than the federal district court did. That doesn't actually answer my question directly. I'd like to know in what circumstances would stealing an employee not translate into coverage of the kind for which you- That employee knew how to build a better Johnson rod, and then we took him and we built a better one and sold it. No coverage because the advertising there merely exposes the harm of taking. It doesn't- It's not designed to compete with stealing in their solicitation of business. Look, this guy knows how to- Whatever Johnson rod is- I mean, let's say he writes code. He'll never see the customer in his life. He'll just sit there in the back room, and all he does is write computer code. But the program for which he sells, you know, that he writes computer code for is wildly popular. So now you bring him over here, and he is now writing code for you. No coverage. And so, you know, this guy is brilliant because, you know, he knows how to sell cars. He knows how to participate in customers' needs. He knows the business. You know, he's not just sitting there writing code, you know, numbers 1s and 0s. He is using his acumen, as he has been over here, to service this particular public. Well, the- And that translates into a product which you advertise as being just like the other product. In that case, it would be no advertising injury. Again, Your Honor- By you. Well, but not- But you can't buy the next guy. Not say me. Say Hartford. Hartford wrote the definitions of advertising injury, misappropriation of advertising idea, misappropriation of style in doing business. That's the policy that Response Time bought. That's the policy that they bought after Hartford lost the Centex Systems case. Okay. What about Judge Graber's question? I think that- Let's say the customer does, in addition to writing code, also sort of knows the customer list, the customer base, customer preferences. You know, he stays in touch with sort of the customer interface. Then what? Then it always falls. It all depends on what the alleged harm is. If the alleged harm is that- You don't hire somebody like that except for the purpose of making a better mouse track or making a better product that he can better sell to you. There's nothing else in business. People are only there for the purpose of selling things, selling product to the public. That's all there is. Well, again, the Response Time's position, we think it's well thought out, and we think it's consistent with Centex, is that there's a distinction. Not every person who is allegedly taken or stolen wrongfully is going to be used to engage in soliciting customers or fixing their needs or analyzing their particular needs. Rather- We have half a minute left. Would you like to stay? I would like to reserve 30 seconds or a minute for rebuttal. Well, you get 30 seconds, anyway. Thank you. May it please the Court. My name- You should speak up. I'm sorry. May it please the Court. My name is Rebecca. Yes, that's right. Put it right at your mouth and put it. My name is Rebecca Rivenbark, and this is my first appearance before the Ninth Circuit. Okay. I've listened carefully to the questions you've asked, Mr. Breslow, and I think that it forms the basis of why there is no advertising injury coverage in this case. How specific does an advertising idea have to be before there's coverage, in your view? In other words, part of their claim is that by understanding the marketing plan of the former employer and bringing that knowledge and information to bear, that that's a misappropriation of an advertising idea. So how specific does an idea have to be or a marketing plan before it falls within the coverage? Well, what it has to do is it has to, first of all, be an advertising idea, and an advertising idea is a way that a company approaches the marketplace, how it puts its products and goods and services out in distribution, how it lets the world know that it's there. And in that circumstance, you know, it has to be specific enough so that the public knows what it is that the company is offering. So an advertising idea would have to consist of how am I going to sell this product to the world? This case is about pirating employees. It is not about advertising, and it's definitely not about response times, advertising activities, or any advertisement that it's ever done. What I'd like to do is I'd like to take the Court back for just a moment and talk about. Before you go into it, could I ask you a question that's been bothering me? And I'll come back to it later as to whether or not I think it's material, but the point has been made that there is marketing material or strategy that was stolen from Sterling by a response time, and then response time immediately takes the CV of the pirated person and faxes it out, advertising the wares of response time. If counsel is correct that marketing materials or strategy has also been stolen, wouldn't this be evidence that that's, in fact, what happened because response time then faxed out Humphrey's CV to all of the potential customers? No, Your Honor. And that's where I'd like to take you back. I will answer your question. No, it does not. First of all, there was no advertisement here. No what? There was no advertisement here. Although Judge McKibben stated in his order that the only potential for advertising activity was the promotion of Humphrey to National City Bank, he did not make a definitive ruling that an advertisement or an advertising activity occurred here. Well, why don't you assume for the sake of Judge Wallace's question that that would constitute a type of advertising, making your, promoting yourself to a customer or potential customer, but then get into why it's still not good enough to steal a marketing strategy. Okay. Assuming a one-on-one solicitation of a facsimile is an advertisement, your question then is what does that advertisement do? First of all, it doesn't cause the injury. The injury here was that response time pirated and stole an employee. And when it did that, as the panel has pointed out, Mr. Humphrey had intimate knowledge with the coding, with the computer science behind the VectorSort product. He also is someone who apparently knew of customers that Sterling interacted with. It is not alleged in the complaint that Mr. Humphrey had any knowledge of how Sterling went about promoting its business to the outside world. You mean the Sterling complaint? I'm sorry? The Sterling complaint. Yes. There's nothing in the Sterling complaint that says that. Yeah. I think that's right. I've read the complaint and reread it, and I don't think it's a complaint in marketing materials or strategy. It's a complaint about misuse of confidential information. It's a case. I used to practice 100 years ago, and when these cases came up, you always looked at the complaint first to see if there was coverage. And I'm struck that your argument is fairly persuasive. If I looked at this complaint, I wouldn't say it's for advertising injury. But your adversary says that the complaint isn't enough. Say we give you that one, that the complaint doesn't show coverage. Your adversary says the complaint isn't enough, that you can look elsewhere to find out about advertising injury. And then during his argument, it indicated why he thought that was so and where it was. What's your response to that? Can you look outside the complaint itself under Nevada law? And if so, what about the argument counsel makes in that regard? First off, Nevada law, under either standard, Your Honor, under a four corners analysis or under an extrinsic evidence analysis, the result is the same. I know. That's the way you get around making decisions. I've watched it for years. I did it myself as a district judge. I understand that. But go ahead with the argument. So under either standard, there would be no coverage, and Judge McKibben found that. What we do is if we look at extrinsic evidence and we look at and Hartford considered everything that was provided to it, including hundreds of pages of Mr. Lansky's deposition testimony offered in the underlying sterling mitigation, hundreds of pages, and attached to that deposition testimony were numerous documents. Obviously, missing from any of that was the advertisement. But we're going to assume for the sake of argument that the fax was actually sent. And what I do have and the panel has is in the record, the facsimiles. There's nothing in this that talks about sterling. There was no allegations outside the complaint or in the complaint that once Humphreys left Sterling Commerce, response time in any way changed the way it went about doing its business. And so if they stole an advertising idea and they didn't use it, then there's no harm. That is exactly why the Sterling Commerce complaint does not allege that they were injured because of a misappropriation of an advertising idea or style of doing business. This is your nexus argument? Yes, Your Honor. It leads into that. Have I answered your question? I think as well as you can. Thank you. Well, what if it turns out they had? I'm sorry, Your Honor? Let's say they had used, they had sent out advertising saying, you will be pleased to know that this employee, I forgot his name, who used to work for our competitor now works for us. And we can provide you the services he once provided customers working for our competitor. It simply shows that response time stole an employee. That's what that shows. Well, it certainly shows that. I mean, it doesn't show. Okay, let me nail the question. Let's say that the one competitor has an advertising campaign where they use this employee as a spearhead. You know, we have the guru. We have the guy who knows the stuff. A little picture of him on an oval desk, you know, and smiling, toothy smile. And they steal the employee. And now the competitor says, you know, we have him. Send out his name and picture with a toothy smile saying, he now works for us and he does exactly the same thing he used to do for them, but now he can get the service from us. Advertising injury? No. It's pirating an employee. It certainly is pirating an employee, but you're also marketing him the same way that the competitor did. But did they market it through the misappropriation of an advertising idea of how the competitor company It's not much of an idea. I mean, it's not a great idea. It's not a novel idea. It's an idea saying, we've got a guy who's really good, and if you hire us, you will get his work. You know, that's a pretty basic idea. And now he's working for these other guys and they say, okay, well, he is now working for us, and he's pretty good and you can get, if you want his services, you will hire us. It's not a hugely novel idea, but it's an idea. But the part that's missing there is, how is that taking the advertising idea of the company from whom the employee left? That has to be the gravamen here, and it's not. First off, I'd like to just talk about advertising injury coverage. It's a specific and limited form of insurance that is intended to cover tort liability arising out of the course of the The focus of the advertising liability insurance is on the insurance advertising itself, the nature and kind of risk covered by advertising injury coverage. It is only when the insurance advertising is the gravamen of the underlying complaint that advertising injury coverage could be triggered. And that's what I want to take the court back and let's look at. Obviously, you can affirm on any grounds that you wish and any grounds that's supported by the record. There was no advertising here. Again, it's missing, and we've assumed for the sake of the arguments we've just had that it was there, but it is not. In appellant's reply brief, excuse me, in response time's reply brief, they say that the fact that they've never produced that facsimile is irrelevant. It's not irrelevant, it's crucial. What we do know, though, is this, is that assuming that that fact did occur, it has nothing and is no way related to the facts in syntax, which is the case that response time hangs its hat on. In syntax, Colombo was ESSI's marketing and sales manager. That's what he did. Here, Mr. Humphrey was not in the advertising or marketing section of Sterling Commerce. Big difference. In syntax, the district court found that through Colombo, the pirated employee, Colombo went out and marketed in the same fashion that ESSI had, but he was marketing for syntax product, which was in direct competition to ESSI's. Didn't happen here. No evidence in the record whatsoever. And also, I would like to just quickly talk about Anthem. In Anthem, one rule of law is that the determination of whether the duty to defend is usually made in the first instance by taking the complaint and aligning it next to the policy. That was done here, and more was done again and again, and there was no advertising and there was no advertising, misappropriation of advertising idea. I think we understand. Okay. I would like to talk about the causation requirement. Let's assume that there was an advertisement. Did it cause the damages complained of by Sterling Commerce? It did not. What I'd like to do is I'd like to point out, first of all, what would the damage be? The crux here is they're saying that somehow response time didn't know about National City Bank and didn't know about Vector Products. That is not what the record supports. What it says in the record is that not only did response time know of National City Bank before they stole Humphrey, they, in fact, had communicated with National City Bank. The numerous facsimiles that have been produced as part of the record were directed to National City Bank, and they include resumes of people with Vector Sort product history. So let's assume there was an advertisement, and let's assume that the advertising, misappropriation of an advertising idea is alleged in the complaint. Did it cause the damage? No. One more important point here is Hamid. The California Supreme Court recently handed down that case. That case is important for a number of reasons. One, it held that one-on-one solicitations does not constitute advertising. Number two, it says that misappropriation of a customer list does not equate to misappropriation of a trade secret. What does that mean for us here? It means that if, in fact ---- Those were coverage cases or duty-to-defend cases? I'm sorry? Those were coverage cases or duty-to-defend cases? Hamid, it was a duty-to-defend case. And it was just handed down, I think, in September by the California Supreme Court. It is on point. It did a couple of things. First, it looked at the Bank of the West, and it says, hey, we didn't decide the issue there about one-on-one solicitations, so we're going to decide it now. It looked at peer lists. And ultimately, the California Supreme Court rejected the proposition that solicitation of customers from a customer list constitutes advertising. Soundly holding that, defining advertising. And, Judge Kuczynski, I think this gets to the question that you asked Mr. Breslow. Wouldn't there always be coverage? The California Supreme Court discussed that issue, and this is what it decided. It decided that if we define advertising to mean a one-on-one solicitation, this facsimile is an advertisement, this is what it does. It says defining advertising to include customer solicitations would stretch too far. If the act of contacting potential customers is advertising for the purposes of a policy, then any dispute related to economic competition among businesses is covered by the policy provision for advertising injury. I request that you affirm that. Thank you, Your Honor. I request that you affirm. Thank you. You have about 30 seconds. I'll talk quickly. We'll round it up to a minute. Hamid does not apply. Hamid was decided last summer. Hartford's duty to determine whether there was a defense came about when it was first presented with the claim in 1998. Again in 1999, when counsel wrote to them, pointed out the facts. I assume the facts in Hamid didn't happen last summer. The facts of Hamid happened a little bit before last summer, but that was not the law that controlled Hartford's duty to investigate, and therefore I would ask you not to apply Hamid. May I briefly conclude, Your Honor? Go ahead. Thank you. We would submit that the allegation here, if you look at the complaint, if you look at the second supplemental disclosure statement, if you look at the testimony of the Vice President of Sterling Commerce, and if you look at Sterling Commerce's appeal brief in Texas, clearly allege harm that looks more like attempting to exploit knowledge to interact with and gain customers than it does manufacturing and design. The case here is almost on all fours with Sentex. Sentex was controlling legal precedent at the time Hartford was presented with this claim, and we would ask you to find that the coverage should have existed and allow the bad faith claim to go forward, even if you do not find coverage existed. Thank you very much. The case is filed. You will stand submitted. We'll hear argument next in Carr v. Providence License Company.  I misread the calendar. I thought Alvera was next. Alvera v. BNA. I skipped one of them. Thank you, Justice Breyer. Thank you. Okay. Okay.
judges: Wallace, Kozinski, Graber